MANHATTAN SAVINGS BANK & TRUST COMPANY *et al. v.*
WILLIAM H. BEDFORD, *et al.*

(*Nashville,* December Term, 1929.)

Opinion filed July 19, 1930.

RANDOLPH, RANDOLPH & CLIFTON, for complainant.

H. J. Livingston, for Julian T. Bedford, defendant.

W. H. Borsje and J. H. Norville, for William H. and Whyte Bedford, defendants.

C. B. Frazier, guardian *ad litem*, for children of William H. and Whyte Bedford, defendants.

Mr. Justice Swiggart delivered the opinion of the Court.

Mrs. Virginia R. Bedford died, testate, in 1916, leaving as her only heirs at law her son, Julian T. Bedford, and two grandsons, William H. Bedford and Whyte Bedford, children of a predeceased son. Creditors of William H. Bedford, bankrupt, instituted this litigation to reach their debtor's interest in the estate of Virginia R. Bedford, rendering necessary the construction of her will in the particulars herein considered. All necessary parties were brought before the court by proper pleading and process, including the children of William H. Bedford and Whyte Bedford individually and as representatives of their class. The trustee in bankruptcy of William H. Bedford intervened as a party complainant, after the filing of the original bill.

The cause was heard in the chancery court upon agreed stipulations of fact, and the appeal was therefore direct to this court. Acts 1925, chapter 100.

By the second and third items of Mrs. Bedford's will her home place, consisting of about 376 acres, was devised in the following language:

"That Julian T. Bedford shall have the West half for life and at his death the remainder shall go to the heirs of his body; that William H. Bedford shall have the East half for life and the remainder shall go to the heirs of his body."

The will contains no residuary clause, nor any provision disposing of the reversion, in the event of the death of either of the life tenants named in the foregoing devise, without leaving heirs of his body.

By his assignments of error, Julian T. Bedford challenges the decree of the chancellor that the interest so devised to him in the west half of the home place is, in the event of his death without leaving heirs of his body, limited to a life estate, with reversion to the heirs at law of his mother, the testatrix.

It is stipulated that Julian T. Bedford, being now past the age of fifty-five years, has no children, living or deceased.

The language of the will, devising real estate to one for life, with remainder to the heirs of his body, is recognized by all counsel herein as falling within the "rule in Shelley's case;" so that if that rule were in effect, the remainder to the heirs of the body of the life tenant would be ineffective and the named life tenant would take a fee-simple estate in the land devised. *Polk* v. *Faris*, 17 Tenn. (9 Yerg.), 209.

The statute of Tennessee, commonly referred to as abolishing the "rule in Shelley's case," Acts 1851-52, chapter 91, section 1, is section 2008 of the Code of 1858 (Shannon's Code, all editions, section 3674), which provides:

"Where a remainder is limited to the heirs, or to the heirs of the body of a person, to whom a life estate in the same premises is given, the persons who, on the termination of the life estate, are heirs, or heirs of body of such tenant, shall take as purchasers, by virtue of the remainder so limited to them."

Of this statute this court, in *Williams* v. *Williams*, 57 Tenn. (10 Heisk.), 566, 568-569, said:

". . . It is obvious that the effect of this enactment is to abolish 'the rule in Shelley's case,' which was indeed its professed object.

"When under the rule it is declared that the words heirs are words of limitation of the estate, it is meant of course that those words point out the line of succession in which the estate is to go, and when it is said they are not words of purchase, it results that they are words of descent, as descent and purchase are the only two modes of acquiring real estate. Hence it followed that although the estate of the first taker was in form a life estate, the rule vests the entire estate imported by the limitation in him, as no one could take as heir of another in whom there was no descendible estate. Therefore, when the statute declares that those who are entitled, on the termination of the life estate, shall take as purchasers, it uses the most apt words to abolish the 'rule in Shelley's case;' and, inasmuch as the heirs do not take by descent but by virtue of the remainder limited to them, it follows that by this enactment of the Legislature the first taker is deprived of any estate in the inheritance, and his interest is restricted in fact to what, under the rule, it was in form, viz.: a particular estate for life. By applying these rules of the statute to the limitations in this will, it is seen that the complainant has but a life estate in the property disposed of by the second item. The statute further declares that those persons who are heirs, or heirs of the body, at the termination of the life estate shall take. It results therefore that the remainder in this case is a contingent remainder, inasmuch as it is uncertain who the heirs of the body of Melville Williams will be when his death occurs; but it is very plain that on his death the estate will vest in those persons who at

that time answer the description of heirs of his body, whether born now or hereafter.''

■ Counsel for Julian T. Bedford refers to *Bigley* v. *Watson*, 98 Tenn., 353, wherein this court said that the ''object of the statute was to give the remainder exactly the effect indicated by the grantor or testator, and in the very persons intended by him, and to prevent it from passing otherwise, or to different persons.'' The contention then made by counsel is this: The statute was enacted for the benefit of the remaindermen contemplated by the will to be construed. If there are no remaindermen, by reason of the failure of heirs of the body of the life tenant, then there is no occasion for the application of the statute, and it should not be held to affect the estate devised by the will to the first taker. In other words, it is contended that it is only when the remainder can vest in possession in heirs of the body of the first taker that the statute has any application, and that it has no effect on the estate of the first taker until, and in the event of, his death leaving heirs of his body surviving. It is contended that there is no reported decision of this court to the contrary, since none of the reported cases, after the enactment of the statute of 1851-52, deal with such a devise when the life tenant died without issue surviving him.

So, the proposition urged is that the ''rule in Shelley's case'' and the statute should be held to jointly operate on the devise to Julian T. Bedford, with this result: that Julian T. Bedford should be held to take a defeasible fee in the land devised, subject to be defeated only by his death with heirs of his body surviving, in which event the remainder would be given effect.

The quotation hereinabove made from *Williams* v. *Williams*, rules the contrary, as effectively as if the court

were then responding to the exact contention now made. The devise to Julian T. Bedford expressly limits his estate to the period of his life. If he is given more, it is by virtue of the words of the devise: "and at his death the remainder shall go to the heirs of his body." Before the statute, these words were words of limitation or descent, and directed that the fee should "descend" from the life tenant to the heirs of his body. Since the fee could not "descend" from him who had it not, the words of descent or limitation were held to vest the fee in him who was, in form, only a life tenant. But the statute stripped these words of descent or limitation of their previously possessed characteristic, when used in connection with the creation of a life estate, and recreated them as words of purchase, no longer to convey the meaning of descent or inheritance. The statute therefore destroyed the only premise upon which the "rule in Shelley's case" could stand; and hence the ruling in *Williams* v. *Williams, supra,* that the statute "uses the most apt words to abolish the rule in Shelley's case."

Counsel for Julian T. Bedford also cites *Anderson* v. *Lucas,* 140 Tenn., 336; *Nott* v. *Fitzgibbon,* 107 Tenn., 54, and *Owen* v. *Hancock,* 38 Tenn. (1 Head), 563. These cases deal with the situation resulting from the failure of an executory devise. The will before us creates a contingent remainder (*Williams* v. *Williams, supra*) and not an executory devise, and the cases cited are not controlling nor in point. See also *Williams* v. *Williams,* 62 Tenn., 55.

The chancellor decreed that Julian T. Bedford's interest in the "west half of the home place" under the will is limited to an estate for life; and that in default of bodily heirs of Julian T. Bedford, the reversion will pass as intestate property to the heirs at law of Virginia R.

Bedford, ascertained as of the date of her death. The decree to be entered here will be to the same effect.

Under *Bigley* v. *Watson,* 98 Tenn., 353, the fee or inheritance devised to the bodily heirs of Julian T. Bedford passed to the heirs at law of the testatrix immediately upon her death, subject to the contingent remainder created by the will, and is not to be considered as in abeyance or *in nubibus* during the continuation of the life estate. A conveyance of this fee by the other heirs at law to Julian T. Bedford would therefore vest in him the fee, "subject to a contingent remainder, in fee, in the heirs of his body living at his death." *Williams* v. *Williams,* 62 Tenn., 55, 59.

It is contended that this result was effected by a "partition deed" or "partition agreement," as it is variously referred to in the stipulation of facts, executed by Julian T. Bedford, William H. Bedford and Whyte Bedford, on May 14, 1918, about two years after the death of the testatrix.

This paper is styled an "agreement," entered into by "the devisees and sole heirs at law of Virginia R. Bedford." It recites the desire of the parties to make a division of the property of Virginia R. Bedford, and after reserving to the parties certain rights as heirs at law, in the event the will should be successfully contested by any of them, stipulates that "this partition is final and binding on all parties hereto provided the alleged will of Virginia R. Bedford is not contested and set aside and nothing herein shall be construed as a waiver or release by any of the parties hereto of any of the conditions under said will if not set aside."

Each of the parties to the partition agreement was given an undivided interest in fee in lands of the testatrix, other than the home place above referred to. The

agreement made a division of these lands, and the other two "released and quitclaimed" to the third party the lands so set apart to him by metes and bounds. Included in this "release and quitclaim" to Julian T. Bedford was the west half of the home place, described by metes and bounds; and included in the "release and quitclaim" to William H. Bedford was the east half of the home place, described in like manner. The language used is: "The said W. H. Bedford and Whyte Bedford do hereby release and quitclaim unto J. T. Bedford, subject, however, to all the terms and conditions and reservations contained herein, the following lands:"

This language is sufficient, nothing else appearing, to convey and transfer to Julian T. Bedford all the interest or estate of W. H. Bedford and Whyte Bedford. Shannon's Code (all editions), sections 3672, 3680. *Campbell* v. *Home Ice & Coal Company*, 126 Tenn., 524, 530-531, wherein this court said: "As we have already said, a quitclaim deed carries title just as any other, unless its language renders that construction impossible."

But in giving effect to a deed of conveyance, the intention of the instrument is the guide to be followed; and that intention is "to be arrived at from the language of the instrument read in the light of the surrounding circumstances." *Dalton* v. *Eller*, 153 Tenn., 418, 419.

Deeds effecting a voluntary partition of land held by tenants in common are usually construed in other jurisdictions as working no change in the estate or interest of the parties. The general rule is accurately stated in the text of 47 Corpus Juris, pp. 280-281 (Partition, section 36):

"Partition by act of the parties operates only to sever the unity of possession. It does not create or confer on the parties thereto any new, different, or additional title,

or enlarge or diminish the estate; and the fact that deeds exchanged between cotenants in effecting the partition contain covenants of general warranty does not affect the operation of this rule. Each party has precisely the same title which he had before the partition, and neither cotenant derives title or interest of his cotenants, the undivided interest which he held in the whole tract being by the partition severed from the interests of his cotenants and concentrated in the parcel set apart to him, and their interests being excluded therefrom.''

And in the next succeeding section (47 Corpus Juris, p. 281), it is said:

''. . . If some of the parties to a partition own moieties in fee and others lesser estates, the latter acquire no new title by the partition to the portion assigned to them in severalty and will hold such portion only by the limited title under which they held their moieties. If the partition is between parties holding a conditional fee or an estate for life only, the partition does not enlarge the estate.''

The general rule was recognized by this court in *Cottrell* v. *Griffiths*, 108 Tenn., 191, 57 L. R. A., 332, 91 Am. St. Rep., 748, to the extent of holding that the inclusion of the husband of a cotenant as vendee in a deed of partion vested no interest in him. The court said: ''Such decree (of partition) or deed only adjusts the rights of the interested parties to the possession. It makes no new title or change in degree of title. Each does not take the allotment by purchase, but is as much seized of it by descent from the common ancestor as of the undivided share before partition. The deed of partition destroys the unity of possession, and henceforth each holds her share in severalty, but such deed confers no new title or

additional estate in the land, or, we may add, less estate than that descended.''

As authority for the foregoing, the court cited only *Whitsett* v. *Wammack,* 159 Mo., 14, 59 S. W., 961, 81 Am. St. Rep., 339. The holding in that case is to the same effect as in *Cottrell* v. *Griffiths, supra,* and is well supported by the authorities cited and reviewed therein. The Missouri court quoted from *Dawson* v. *Lawrence,* 13 Ohio, 543, 42 Am. Dec., 210, the following: ''tenants in common making mutual deeds of bargain, sale, and release, expressing nominal considerations, do not thereby acquire or lose any title, but obtain defined boundaries to the land they previously held in common. Such deeds operate as deeds of partition only.''

In *Jones* v. *Jones,* 150 Tenn., 554, this court held that the rule stated in *Cottrell* v. *Griffiths, supra,* would not be applied to a partition deed in which one of the shares of an estate was conveyed to the heir for life, with remainder to her children or descendants; and the deed was construed as a covenant of the heir to stand seized for the use of her children. But in this ruling the court gave effect to the manifest intention of the deed, as evidenced by the language employed therein. *Dalton* v. *Eller, supra.* The express limitation of the estate of the heir to a life estate, with remainder to her issue, created an obvious exception to the general rule.

We think the instrument executed by the parties in this cause contains inherent evidence of their intention only to sever the interest and estate granted to each by the will of Mrs. Bedford. It is expressly termed a partition ''agreement,'' and contains the stipulation that ''nothing herein shall be construed as a waiver or release by any of the parties hereto of any of the conditions under said will if not set aside.'' This evidences the intention

of the parties that each should hold the land allotted to him under the terms and conditions of the will and not otherwise. The reversion of the home place, in default of bodily heirs of either life tenant and the consequent failure of the contingent remainder created for such heirs, was not devised by the will, and was not intended to be included in the partition agreement. We therefore concur in the conclusion of the chancellor that, in so far as the home place is concerned, the agreement of May 14, 1918, has no effect other than to designate the respective portions devised by the will of Virginia R. Bedford to the two life tenants, William H. Bedford and Julian T. Bedford.

The remaining question, presented by assignments of error of William H. Bedford, is whether the reversionary interest of William H. Bedford, as heir at law of his grandmother, in the west half of the home place, passed to his trustee in bankruptcy as an asset of his bankruptcy estate. The chancellor decreed that this interest of William H. Bedford passed to his trustee in bankruptcy; and Bedford alone has appealed from this portion of the decree.

The interest of the heirs at law of Virginia R. Bedford in the home place, subject to the life estate and contingent remainder created by the will, is properly termed an interest in reversion. "An estate in reversion is the residue of an estate left in the grantor, to commence in possession after the determination of some particular estate granted out by him." 21 Corpus Juris, p. 1016 (Estates, section 179). It arises by operation of law, because the grantor has conveyed less than his whole interest or estate.

This interest is vested in the heirs at law, by inheritance from the testatrix, notwithstanding it is con-

tingent and liable to be entirely divested by the death of the life tenants with bodily heirs surviving. *Clopton* v. *Clopton,* 49 Tenn. (2 Heisk.), 31. Because it is vested, this contingent interest or estate in reversion is assignable. *Clopton* v. *Clopton, supra; Williams* v. *Williams,* 62 Tenn., 55, 59.

The Bankruptcy Act, U. S. C. Title 11, section 110, subsection 5, provides that the trustee in bankruptcy shall be vested by operation of law with the title of the bankrupt to "property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him."

This provision of the Bankruptcy Act is in the alternative. The trustee is given the bankrupt's title to property which he himself might have transferred and to property which would have been subject to levy and sale under judicial process.

Since the trustee is entitled, by express provision of the Bankruptcy Act, to property of the bankrupt which he might have transferred, and since the rule is so well settled in this jurisdiction that the vested reversionary interest of William H. Bedford was assignable by him, it necessarily follows that this interest passed to the trustee upon the adjudication of bankruptcy.

It is therefore unnecessary to determine herein whether the interest of William H. Bedford in the reversion was subject to levy and sale under judicial process; as to which, see: *Kelly* v. *Morgan,* 11 Tenn. (3 Yerg.), 437; *Henderson* v. *Hill,* 77 Tenn., 34; *Nichols* v. *Guthrie,* 109 Tenn., 335.

Whether this reversionary interest of William H. Bedford has such present value that it should be sold as an asset of his bankruptcy estate, for the benefit of his credi-

tors, is a question for determination by the bankruptcy court.

Counsel for William H. Bedford strongly urge as supporting their contention, the case of *Suskin & Berry* v. *Rumley*, 37 Fed. (2d) 304, decided by the Circuit Court of Appeals for the Fourth Circuit. The case cannot be controlling here, because the decision in favor of the bankrupt was rested upon a holding that his interest, sought to be reached by the trustee, was. "not such as he could have transferred or as could have been subjected to sale for payment of his debts." Here, counsel for the bankrupt say on their brief: "We admit that the interest is devisable and descendible and may be sold at voluntary sale by the owner, but deny that the same is subject to involuntary sale." The admission merely concedes the effect of previous decisions of this court, but the fact admitted sustains the trustee's claim under the Bankruptcy Act.

Each of the appellants prayed and was granted a special appeal from designated portions of the decree of the chancellor. We have considered only questions presented by assignments of error, as herein discussed. The several assignments of error will be overruled and the decree of the chancellor affirmed. Costs of the appeal are adjudged, three-fourths against the appellant, Julian T. Bedford, and his sureties, and one-fourth against the appellant, William H. Bedford. The cause will be remanded for adjudication by the chancellor of the costs of that court.