CAROLYN T. BEDFORD, Appellee, v. WILLIAM H. BEDFORD et al., Appellants.—274 S. W. (2d) 528.

Western Section.    May 25, 1954.

Petition for Certiorari denied by Supreme Court, December 16, 1954.

Sam P. Walker, Erich Merrill, Waring, Walker, Cox & Lewis, all of Memphis, of counsel, for appellants.

John S. Porter, Jesse E. Johnson, Jr., both of Livingston, Vineyard & Sherman, and Burch, Porter & Johnson, of Memphis, of counsel, for appellee.

CARNEY, J. Appeal from the Chancery Court of Shelby County sustaining the appeal of complainant, Carolyn T. Bedford, for partition of a tract of land containing approximately 352 acres, located on the north side of Poplar Pike in Shelby County, Tennessee. The appellants, Louise Duke Bedford and Whyte Bedford, insist that the complainant has no interest in the real estate sought to be partitioned.

The land was owned by Virginia R. Bedford, who died in 1916 leaving a will. Item 2 of the will provides as follows:

"I direct that my homeplace of about three hundred acres, lying along the Southern Railroad and near Bailey, Tenn., be divided into three equal parts with equal frontage along the railroad. I give and bequeath to Julian T. Bedford, my son, for life the west one-third of the home place and the remainder to go to the heirs of his body. I give and bequeath to William H. Bedford, my grandson, the east one-third of

the home place to be his for life and the remainder at his death to go to the heirs of his body. The middle one-third of the home place I give and bequeath to my daughter, Ellen, to be hers for life. At her death the west half of the middle one-third of the home place shall go to Julian T. Bedford to be his for life and at his death to go to the heirs of his body. At Ellen's death the east half of the middle one-third of the home place shall go to William H. Bedford to be his for life and the remainder at his death to go to the heirs of his body."

Section 3 of said will provided:

"If Ellen's death occurs prior to my own, then I direct that the home place shall be divided into two equal parts with equal frontage."

Ellen Bedford died without children prior to the death of the testatrix and, under the will, the eastern one-half of said 352 acres went to William H. Bedford for life, with remainder to the heirs of his body. William H. Bedford died pending this litigation, leaving heirs of his body, who took the fee in the eastern one-half of said homeplace, and the same is not in litigation in this cause.

William H. Bedford left a widow, the appellant, Louise Duke Bedford, who is the sole beneficiary and devisee under the will of William H. Bedford, deceased.

The defendant, Whyte Bedford, is a brother of the deceased, William H. Bedford, and is also a grandson of the original testatrix, Virginia R. Bedford, he and his brother, William H. Bedford, being the only children of William H. Bedford, Sr., a son of Virginia R. Bedford, and who was dead at the time the will of Mrs. Virginia R. Bedford was made in 1912.

Julian T. Bedford, son of the testatrix, died testate in Shelby County, Tennessee, on July 20, 1949, without

children, and devised all of his property to his widow, the complainant, Carolyn T. Bedford.

The contest in this Court is over the western one-half of the homeplace of 352 acres in which Carolyn T. Bedford, as the sole devisee of Julian T. Bedford, claims one-half interest in said western half, and the appellants, Louise Duke Bedford and Whyte Bedford, claim to own the entire western one-half of said homeplace.

Carolyn T. Bedford contends that since there was no residuary clause in the will of Mrs. Virginia R. Bedford, disposing of this western one-half in the event Julian T. Bedford died without heirs of his body to take the remainder interest, Mrs. Virginia Bedford died intestate as to the reversionary interest in said western one-half, subject to the life estate to her son, Julian Bedford, and a contingent remainder in the heirs of his body. She contends further that upon the death of Mrs. Virginia R. Bedford the reversionary interest in said western half of the homeplace descended by operation of law as intestate real estate, one-half to Julian T. Bedford, a son; one-fourth to William H. Bedford, a grandson; and one-fourth to Whyte Bedford, a grandson of Mrs. Virginia R. Bedford, and that by the will of Julian T. Bedford, the complainant, Carolyn T. Bedford, was devised his one-half interest in reversion in said western one-half of the homeplace.

The deceased, William H. Bedford, and his brother, Whyte Bedford, in their answer to the original bill in this cause, denied that Julian T. Bedford owned a devisable interest in the western part of said homeplace and that, hence, his devisee, the complainant, owned no interest in said real estate, and that under the will of Virginia R. Bedford, it was plainly her intent that the present complainant have no interest in said real estate,

motivated by a feeling of hostility toward her. The defendants further, in their answer, denied that the case of Manhattan Savings Bank & Trust Co. v. Bedford, 161 Tenn. 187, 30 S. W. (2d) 227, settled the rights of the defendants to the real estate involved, and further, in general terms, averred that the fee simple title, subject to certain mortgages, was vested in defendants ''in accordance with the will of Virginia Bedford and the laws of Tennessee.''

The Chancellor held that the deceased, Julian T. Bedford, was the owner in fee of an undivided one-half interest in reversion in said western half of the homeplace, subject to a life estate in himself to the entire western half, and subject to a contingent remainder in favor of the heirs of his body, and that upon his death without heirs of his body, the complainant, Carolyn T. Bedford, as his sole devisee, became the owner of said one-half interest in the western half of the homeplace and, accordingly, entitled to partition thereof.

The decree of the Chancellor below indicates that he considered the title to the lands in this case to have been conclusively determined and adjudicated by the case of Manhattan Savings Bank & Trust Co. v. Bedford, reported in 161 Tenn. 187, 30 S. W. (2d) 227.

In this Court appellants, Louise Duke Bedford and Whyte Bedford, contend that the clear and obvious intent of Virginia Bedford was that her homeplace should go only to the three persons named in Paragraph 2 of her will, and that her intent was clearly that if any of these three should die without issue, the remainder of such interest should go to the survivors of the three persons named in Paragraphs 2 and 3 of her will, so that, on the death of Julian Bedford, without issue, there was an implied gift of the remainder to William H. Bedford.

As very clearly stated by Solicitors for appellants, Assignments of Error 1 through 5 all raise the same issue: That is, whether the will of Virginia Bedford disposed of all of her interest in the homeplace or whether it left undisposed of a reversion that passed as intestate property. Therefore, these Assignments can be discussed together.

We notice first the case of Manhattan Savings Bank & Trust Co. v. Bedford, supra, the pleadings of which were made a part of the record in this case below.

A review of this case reveals that the suit was originally instituted in 1927 in the Chancery Court of Shelby County, Tennessee, by the Manhattan Savings Bank & Tr. Company as creditor of William H. Bedford, who was then or soon thereafter became bankrupt, seeking to reach his interest in lands devised to him by the will of his mother, Mrs. Virginia R. Bedford, above referred to. The said William H. Bedford, his brother, Whyte Bedford, his children, his wife, Louise Duke Bedford, and his uncle, Julian T. Bedford, as well as a number of other parties, were all impleaded by proper process, and a construction of the will of Mrs. Virginia R. Bedford was sought to determine the interest of William H. Bedford in said lands, and, particularly, the homeplace of some 352 acres involved in this suit. The defendant, Julian T. Bedford, filed answer contending that he owned a fee simple in the western half of said homeplace, subject only to a defeasance by dying and leaving heirs of the body to take the remainder.

C. C. Cline, Trustee in Bankruptcy, filed answer and cross-bill and impleaded Julian T. Bedford, William H. Bedford, and Whyte Bedford, asking the Court to construe Item 3 of Mrs. Virginia Bedford's will to determine whether or not William H. Bedford had any interest

or possibility of interest in Julian T. Bedford's portion of the homeplace under said will.

The defendant, William H. Bedford, filed answer, and, among other things, denied that he had any interest which would pass in bankruptcy to the Trustee, and stated that under a proper construction of the will, in the event his uncle, Julian T. Bedford, should die without leaving children or descendants of children, then the heirs at law of Mrs. Virginia R. Bedford, to-wit, himself and his brother, Whyte Bedford, would become entitled to the absolute fee simple title in possession of the western portion of said property in which his uncle took a life estate.

The defendant, Whyte Bedford, also answered stating, in substance, that if his uncle, Julian T. Bedford, died without leaving any children or descendants of children, then he and his brother, William H. Bedford, would own said real estate absolutely and in fee, as tenants in common.

The Chancellor construed the will of Mrs. Virginia R. Bedford and adjudicated the rights of the parties in and to the same tract of land under the same will which is now in controversy in this litigation. This decision was appealed to the Supreme Court by both Julian T. Bedford and William H. Bedford, and the Supreme Court affirmed the decision of the Chancellor to the effect that Julian T. Bedford was the owner by inheritance of a one-half reversionary interest in the west half of the homeplace, subject to his life estate and the contingent remainder in favor of the heirs of his body.

The appellants contend that this decision is not res judicata between Julian T. Bedford and William H. Bedford for the reason that they were not adversaries as to the issue made in this case on appeal, namely, that Julian

T. Bedford took the entire remainder interest by implication. Appellants rely upon the case of Wiles v. Young, 1933, 167 Tenn. 224, at page 226, 68 S. W. (2d) 114, in which the Court said as follows:

"The general rule is that parties to a judgment are not bound by it in subsequent controversies between each other, unless they were adversaries in the suit in which the judgment was rendered. * * *

" 'Hence a judgment against several defendants is usually not conclusive as between themselves in respect to their rights and liabilities toward each other, unless the defendants contest an issue with each other, either upon the pleadings between themselves and the plaintiffs or upon cross-pleadings between themselves.' "

We agree with the general statement set out and relied upon, but feel that in the Manhattan Savings Bank & Trust Co. v. Bedford case, Julian T. Bedford and William H. Bedford were adversaries within the meaning of the rule. Julian T. Bedford claimed a full fee simple, subject only to a defeasance by leaving heirs of his body, and the defendants, William H. Bedford and Whyte Bedford, denied that he owned a fee and, on the contrary, insisted that he had nothing but a life estate and upon his dying without heirs of his body, William H. Bedford and Whyte Bedford would own the land jointly as tenants in common.

A Court of competent jurisdiction determined the issues adversely to the contention of all three of the litigants, and held that all three of the parties owned the reversionary interest in the western half of the lands in controversy in this litigation by descent from their grandmother and mother, and which ruling was approved by the Supreme Court upon appeal. We think that all

issues between Julian T. Bedford and William H. Bedford as to their respective interests in the western half of the homeplace were conclusively determined by the Chancery Court and the Supreme Court and such judgment is binding upon Carolyn T. Bedford as the devisee of Julian T. Bedford, and upon Louise Duke Bedford, as the devisee of William H. Bedford, and upon Whyte Bedford as a party to said original suit.

To hold otherwise would mean that no decree adjudicating the title to real estate would ever be final and that a losing party, his descendants or devisees, could at some subsequent date relitigate his claim to such land by advancing a new theory or contention on which he sought to establish ownership and, theoretically, could bring just as many suits and re-open the litigation just as many times as he could think up new theories upon which to predicate his claim of title. Such a ruling would, in our opinion, unduly burden and impede the transfer and financing of real estate and would not be in the public interest.

However, we have reviewed the evidence submitted by appellants in the trial below in this case, to-wit: The testimony of the defendant, William H. Bedford, his wife, Louise Duke Bedford, and Whyte Bedford, as to conditions which existed in the home of Virginia R. Bedford at the time she wrote her will, and which continued until she died. The tenor of this testimony is to the effect that Virginia R. Bedford merely tolerated the complainant, Carolyn T. Bedford, as her daughter-in-law, but was never pleased with the marriage; that Virginia R. Bedford inherited the homeplace from her father, and she wanted the homeplace to remain in her family and to her flesh and blood. There was no testimony to the contrary,

and the Chancellor sustained the exceptions of the complainant to the admissibility of this evidence.

We have reviewed the cases cited by Solicitors for appellants and agree with the quotation from Green v. Young, 1931, 163 Tenn. 16, 40 S. W. (2d) 793, as follows:

"Another general rule is that a presumption applies that a testator intended to dispose of his entire estate, and not to die intestate, either as to the whole, or any part thereof, or interest therein."

Likewise, we agree with the principle announced in the quotation from Garner v. Becton, 1947, 187 Tenn. 34, 212 S. W. (2d) 890, 891, as follows:

"It is a well recognized rule, universally in force, that the courts will endeavor to ascertain and enforce the intention of the testator, except where forbidden by positive rules of law. This intention is to be ascertained from a consideration of the will as a whole and not from its disjointed fragments."

Likewise, we recognize the authority of the Courts to determine a gift over by implication in certain cases as shown by Rogers v. Rogers, 39 Tenn. 660; Adkisson v. Adkisson, 1913, 4 Tenn. Civ. App. 453, and other cases cited in appellants' brief.

However, we feel that the question of an implied gift over must be denied on the authority of many cases decided by the Supreme Court in which a testator devised real estate to persons for life with contingent remainder to the heirs or children of the life tenant and with no gift over in case of the death of such life tenant without leaving heirs of the body or children. The Courts have held that the testator died intestate as to such reversion which descended to his heirs at law by the Statute of Descent, Code, Sec. 8380 et seq. Among the many cases so holding are Williams v. Williams, 62 Tenn. 55; Clopton

v. Clopton, 49 Tenn. 31; Manhattan Savings Bank & Trust Co. v. Bedford, supra; and, more recently, First Nat. Bank of Springfield v. Pointer, 174 Tenn. 472, 126 S. W. (2d) 335.

Consequently, we are constrained to hold that even if the decision in Manhattan Savings Bank & Trust Co. v. Bedford, supra, were not res judicata, yet the construction of the will and the decision of the Court concerning the interest of the parties in the real estate, together with the cases cited, are determinative of the matters in controversy in this cause, and that a gift over by implication cannot be and should not be made.

It also appears that if we were to raise a devise by implication as insisted by appellants, under the clear intent of the testatrix as shown in Item 2 of the will, the devise over could be to William H. Bedford only for life, with remainder in fee to the heirs of his body, and such a devise would be of no benefit to the present appellants, Louise Duke Bedford or Whyte Bedford. However, this is just an observation, and our decision is in no way predicated upon such observation.

Appellants insist that to hold that a reversion existed under the will of Mrs. Virginia R. Bedford would be to pervert her will and that it enabled Julian T. Bedford to enlarge his life estate. With this we must respectfully disagree. Julian T. Bedford received a life estate under the will, subject to a contingent remainder in favor of his bodily heirs, if he had any. He inherited a reversionary interest under the laws of descent and distribution from his mother. His life estate was as to the entire western part of the homeplace, whereas his reversionary interest was only one-half interest in the western half. We see nothing inconsistent in the title in the two interests which Julian T. Bedford had in the

real estate, and we are cited.to no authority which holds that they are inconsistent. Likewise, we think it .clear that Julian T. Bedford had a legal right to devise his reversionary interest to his wife, the complainant, no matter how hostile his mother may have been toward the complainant.

It follows that Assignments of Error 1 through 5 must respectfully be overruled.

■ One other question is presented to the Court concerning the beginning point on the survey for the partition in kind of the western half of the homeplace on the basis of one-half to complainant, and one-fourth each to Whyte Bedford and Louise Duke Bedford. The will of Virginia R. Bedford was dated December 9, 1912, and a codicil concerning certain articles of personal property only was executed by the testatrix on June 20, 1914. A second codicil affecting household goods was executed on November 2, 1915.

On November 11, 1913, which was after the execution of the original will and before the execution of the two codicils, Mrs. Virginia R. Bedford conveyed by deed of gift to her grandson, William H. Bedford, for love and affection, a tract of 3 acres off the southeast corner of the homeplace, fronting some 315 feet on Poplar Boulevard and running northward about 420 feet deep.

The Chancellor decreed that in dividing the homeplace in accordance with Paragraph 2 of the original will of Mrs. Virginia Bedford, the same should be divided as of the date of the making of the will and before the deed of gift to the grandson, William H. Bedford, and, hence, provided that the dividing line should be run northward from a point in Poplar Pike equidistant from the southwest corner and the southeast corner of the homeplace as .it existed at the time of the making of the original

will, and a line projected to the north boundary line in such a manner that the acreage in the west portion will be equal to the acreage in the east portion, including the 3 acres conveyed as a deed of gift to William H. Bedford.

Appellants contend that the deed of gift of 3 acres should be excluded before the homeplace is divided into east and west portions, and the west portion in turn divided between Carolyn T. Bedford, Whyte Bedford, and Louise Duke Bedford. Appellants insist that the will shows a clear intention to favor William H. Bedford over Whyte Bedford and Carolyn T. Bedford, and that she executed two codicils after she had deeded the 3 acres to William H. Bedford, and that if she had intended for the deed to operate as a partial satisfaction of the devise to William H. Bedford, she would certainly have said so in these codicils.

It is our opinion that the primary over-all intention of the testatrix was to allot the eastern half of the homeplace to William H. Bedford for life, with remainder to the heirs of his body. Subsequent to the execution of this provision of the will she made a pro tanto ademption and modification of this specific devise by giving William H. Bedford 3 acres off the southeast corner in fee instead of for life, and that such gift did not operate to modify the over-all intention to divide the homeplace equally as above set out. Ford v. Cottrell, 141 Tenn. 169, 207 S. W. 734.

Assignments of Error 6 and 7 must be overruled.

We do not deem it necessary to decide whether the doctrine of Advancements applies to gifts from grandparent to grandchild, though it seems that generally the doctrine is applied to such gifts where the intermediary

parent is deceased. 1 Am. Jur. Adv., Sec. 36, p. 731.

A decree will be entered in this Court dismissing the appeal and affirming the decree of the Chancellor and remanding the cause to the Chancery Court of Shelby County for further proceedings consistent with this opinion. The costs of the appeal are taxed against the appellants and the sureties on their appeal bond.

Avery, P. J., and Bejach, J., concur.