Ethel WILLIAMS, Plaintiff–Appellee,

v.

ESTATE OF G.A. WILLIAMS, et al., Defendants–Appellants.

Supreme Court of Tennessee, at Knoxville.

Oct. 25, 1993.

Jeffrey L. Cunningham, Carter, Harrod & Cunningham, Athens, for plaintiff-appellee.

J. Lewis Kinnard, Madisonville, for defendants-appellants.

## OPINION

REID, Chief Justice.

This suit seeks the construction of the last will and testament of G.A. Williams, deceased, and the declaration of the rights of the parties in a tract of land described in the will.

The record does not contain all the information necessary for the Court to adjudicate the ownership of the land. The record consists of the complaint, filed by Ethel Williams; the answer of Rachel Couch, one of several named defendants, which subsequently was adopted by two additional defendants, Curtis Williams and Wayne Williams; a copy of the will; and memoranda and orders entered by the trial court. The named defendants are the estate of G.A. Williams and 14 persons alleged to be "children, grandchildren or great-grandchildren of G.A. Williams." Though the suit purports to be against the estate, which was not a necessary party, the executor was not named and made no appearance. It would seem most unlikely that the estate had not been closed. The defendants, other than Rachel Couch, Curtis Williams, and Wayne Williams, made no appearance but, so far as the record shows, have not been defaulted. The record does not show the age or competency of the defendants. There is in the court file a paper described in the appellant's brief as "the listing of G.A. Williams' heirs filed by agreement in the Court of Appeals." That listing, even if raised to the dignity of a stipulation, is not sufficient proof of heirship on which to base the adjudication of title to real estate. The trial court made no findings of fact.

The only facts alleged are that G.A. Williams died on November 17, 1944, the instrument attached to the complaint is a copy of his last will and testament, the farm mentioned in the will is located in McMinn County, and, inferentially, the farm was owned by the testator at the time of his death. These allegations are admitted by Rachel Couch, Curtis Williams, and Wayne Williams, the only defendants actually before the Court.

Additional facts, though not proven or stipulated but apparently not disputed by the parties before the Court, are relied upon in the briefs. The will was executed on July 18, 1933, and probated in the Probate Court of McMinn County on November 24, 1944. The testator was survived by nine children, including the three daughters named in the will. The plaintiff, Ethel Williams, who was 92 years of age when the complaint was filed, is the only survivor of the three children named in the will. The defendant Etta Tallent is the only other surviving child of the testator, and the other defendants are lineal descendants of the testator. (There is no statement that the named defendants are all the heirs at law of the testator.) Ethel

Williams has maintained possession of the farm since the death of the testator, jointly with Ida Williams and Mallie Williams until their deaths. Apparently none of the three-named daughters ever married, though that fact does not affirmatively appear.

The will is as follows:

I, G.A. WILLIAMS, being of sound mind make this my last will and Testament: At my death I want Ida Williams, Mallie Williams, and Ethel Williams, three of my daughters to have my home farm where I now live, consisting of one hundred and eighty-eight acres, to have and to hold during their lives, and not to be sold during their lifetime. If any of them marry their interest ceases and the ones that remain single have full control of same. I am making this will because they have stayed at home and taken care of the home and cared for their mother during her sickness, and I do not want them sold out of a home. If any one tries to contest this will I want them debarred from any interest in my estate. /s/ G.A. Williams, July the 18, 1933.

The complaint alleged that the interest received by Ethel Williams was a life estate under the will or, in the alternative, a life estate under the will and a "remainder interest" by intestate succession. The latter disposition was adopted by the Chancellor initially, but on rehearing was abandoned for the finding that the devise of a life estate without limitation over indicated an intention that the named daughters have the property in fee simple, which is the position asserted by Ethel Williams on appeal.

The Court of Appeals affirmed the holding of the trial court. It held, on the authority of *White v. Brown*, 559 S.W.2d 938 (Tenn.1977), that each named daughter owned a one-third undivided interest in fee simple. The record does not support that decision.

■■■ The function of a suit to construe a will is to ascertain and effect the intention of the testator. The determinative intention is the predominant purpose expressed by the testator in the will. Statements regarding the means whereby the predominant purpose of the will is to be accomplished will not be given literal effect if they would defeat the predominant intention. 1 Harry Phillips & Jack W. Robinson, *Pritchard on Wills and Administration of Estates* § 387, at 492–93 (4th ed. 1983) (footnotes omitted) states as follows:

When a controlling or predominant purpose of the testator is expressed, it is the duty of the court to effectuate that purpose and to construe all subsidiary clauses so as to bring them into subordination to such purpose.

The rule that the intention shall prevail is grounded in the nature and purpose of construction by the courts; that is, so to construe a writing authorized by law to be made, which purports to be a disposition of the property of the testator, that it will accomplish what he wills to do. This will or intention must of necessity control, unless it contravenes some rule of law or public policy.

Although our books, and especially the older ones, are filled with precedents prescribing rules, often of an arbitrary character, for ascertaining the meaning of the testator, the practical common sense of more modern decisions, both in this country and in England, has reached the conclusion stated by Lord Selborne that there can be nothing more certain than that every will is to be construed by itself and not by the wills of other testators; and all the light that can be got from other decisions serves only to show in what manner the principles of reasonable construction have been applied by judges of high authority in cases more or less similar. It is rarely necessary, and seldom beneficial, to go over the precedents on the question of the meaning of testators in other wills. The intention of the testator whose will is under construction is what the court seeks to ascertain, and that is to be gathered from the language he has used. The intention must be ascertained from what the testator has written into the will and not from what some interested party supposes that he intended to do. The duty of the court is to expound, not to create. The court will not determine the devolution of estates based upon mere surmise as to the testator's intention. It is not the duty of

the court to search for any meaning otherwise than by fairly interpreting the language of the will.

Under no circumstances will a rule of construction be applied that would operate to defeat the clear intention of the testator.

This Court stated the rule more concisely in *Moore v. Neely*, 212 Tenn. 496, 370 S.W.2d 537 (1963):

Another rule of construction is that when a controlling or predominate purpose of the testator is expressed, it is the duty of the court to effectuate that purpose, and to construe all subsidiary clauses so as to bring them into subordination to such purpose. The language of a single sentence is not to control as against the evident purpose and intent shown by the whole will.

*Id.* 370 S.W.2d at 540.

In the case before the Court, the predominant intention of the testator is clear. Each of the testator's three daughters who had "stayed home" was to have the farm jointly with the other two daughters, so long as they were living and unmarried, as a residence and for their support; after the death or marriage of any of the three daughters, the remaining two daughters would hold jointly until the marriage or death of another; and the remaining unmarried daughter was to hold until she married or died. The statements that the farm was "not to be sold during their lifetime" and "I do not want them sold out of a home" emphasized and reenforced the predominant intention that each of the three daughters have a residence and support during her life or until she should marry. The testator's statement that he was favoring those children above the others because they had "stayed at home and taken care of ... their mother" implicitly recognized that each had foregone the opportunity to become self-supporting or be supported by a husband, and limiting the duration of the devise to such time as a daughter should marry, indicates that the devise was intended to be a substitute for support that might otherwise have been available.

The intention of the testator was not to make an absolute gift to all or either of the daughters. The first statement in the will limits the devise "during their lives." The next statement limits the devise to the duration of their unmarried state. The testator devised to the daughters an interest not readily alienable and one that could not be defeated by a suit for partition or sale for partition. His reason for selecting the estate devised is indicated by the statements "not to be sold during their lifetime" and "I do not want them sold out of a home." Upon the death or marriage of the named daughters, the testator's purpose as to them would have been accomplished and the testator's heirs would inherit the property by intestate succession.

The testator recognized that his other heirs would acquire some interest in the property upon his death. The primary emphasis was that the daughters' limited interests not be disturbed by the owners of the interest not devised to the daughters. The severity of his admonition is shown by the provision that any person who should "contest" the will would be "debarred" from any interest, not just in the farm but in his estate.

This case is not controlled by *White v. Brown*, relied upon by the Court of Appeals. In that case, the following provision was found to constitute the devise of a fee simple:

"... I wish Evelyn White to have my home to live in and *not* to be *sold.*

I also leave my personal property to Sandra White Perry. My house is not to be sold."

559 S.W.2d at 938. The majority in *White* based its decision on that portion of what is now T.C.A. § 32–3–101 (1984) which provides:

A will ... shall convey all the real estate belonging to [the testator], or in which he had any interest at his decease, unless a contrary intention appear by its words in context.

However, in language applicable to the case before the Court, Justice Harbison, dissenting, stated:

I have serious doubt that the testatrix intended to create any illegal restraint on alienation or to violate any other rules of law. It seems to me that she rather em-

phatically intended to provide that her sister-in-law was not to be able to sell the house during the lifetime of the latter—a result which is both legal and consistent with the creation of a life estate.

*Id.* at 942. That statute does not control the disposition in the case before the Court because, as discussed above, a contrary intention appears from the will. The provision that each daughter's interest would terminate upon her marriage, as well as upon her death, is a further indication that the testator did not intend for the named daughters to have an absolute estate in the farm. As stated in *Page on Wills,*

> The gift to A may indicate quite clearly that it is a gift for the life of A, as where the gift is to A for life or until her marriage, or a gift to A for life or during her widowhood. In gifts of this sort, A takes a life estate, since the provision with reference to marriage or widowhood is, at least, not sufficient to overcome the effect of the provisions of the will which show that testator intends to give to A a life estate only.
>
> . . . .
>
> . . . By what seems to be the weight of authority, a gift to A until her marriage or during widowhood gives a life estate to A. Such life estate would be defeasible or determinable upon the marriage of A.

4 William J. Bowe & Douglas H. Parker, *Page on Wills,* § 37.22, at 632–634 (4th ed. 1961) (footnotes omitted).

The will as a whole conveys a definite meaning. Though the author obviously was not a skilled legal draftsman, he, also obviously, had a good command of language and was familiar with legal phrases commonly used and understood beyond the legal profession. The testator accurately described the instrument he was writing as his "last will and testament," he asserted that he was "of sound mind," and he employed the traditional words of conveyance—"to have and to hold"—in devising an interest in real estate to the daughters. Even "contest," though perhaps not used accurately in its narrow, technical sense, may indicate an action designed to defeat a testamentary disposition. The conclusion is almost inescapable that, had the testator intended to devise the named beneficiaries an estate in fee, he would have expressed that intention quite clearly. Consequently, the estate devised to the named daughters was less than a fee simple.

Upon the death of the testator, each named daughter held a life estate, defeasible or determinable upon her marriage. *See Id.* Each daughter also had an executory interest in each of the other two daughters' one-third interest, which would vest in her possession if the other life tenant should die or marry while she remained unmarried. *See* Lewis M. Sines & Allan F. Smith, *The Law of Future Interest,* § 285 (2d ed. 1956). The heirs-at-law of the testator held a reversion in fee simple, subject to the determinable life estates and the executory interests in the named daughters, which reversion would vest in possession, at the latest, upon the death of the survivor of the named daughters. *See* Cornelius J. Moynihan, *Introduction to the Law of Real Property,* at 94–95 (1962).

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings.

Costs are taxed to the appellee.

DROWOTA, O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.