Beale *v.* Parish.

## BEALE and others *vs.* PARISH and others.

Where the holder of a note, on its arriving at maturity, uses due diligence to ascertain the residence of the indorser, and sends notice of protest to the place designated as such, he will be entitled, as such holder, to recover against the indorser; although in fact, owing to misinformation, the notice was not sent to the right place. And a second indorser, who subsequently pays the amount of the note, to the holder, and thus becomes the owner thereof, stands in the shoes of the holder, and is subrogated to his rights. And this, although he himself knew where the indorser resided, at the time notice of protest was sent.

Thus, where the plaintiffs, being the holders of a note, before it fell due indorsed and transferred it to the C. Bank, and T., the notary of the bank, at the maturity of the note, demanded payment of it, and the next day inquired at the C. Bank where the first indorser resided, and was told they did not know; and he then gave the plaintiffs notice of non-payment and inquired of them where he should send notice to the first indorser, and was told that he resided either at Dunkirk or Buffalo, and was requested by them to send notice to him at both of those places, which was done accordingly; although the indorser in fact resided at C., and the plaintiffs knew that fact; upon the plaintiffs subse-

Beale *v.* Parish.

quently paying the note, at the bank, and becoming the holders thereof; *it was held* that they could maintain an action thereon, against the first indorser. PEABODY, J., dissented.

APPEAL by the defendants, from a judgment entered at a special term. The action was upon a promissory note, by indorsees against an indorser. The facts will be found in the opinion of PEABODY, J.

*P. G. Clark,* for the appellants.

*J. C. T. Smidt,* for the respondents.

ROOSEVELT, P. J. The bank having discounted the note became the holder of it; and the bank as such holder having used due diligence to ascertain the residence of the indorser, and having sent notice of protest to the place designated (although erroneously) as the residence of the indorser, was entitled as such holder to recover against the indorser. The plaintiffs, who paid the bank, (there being no pretense of intentional misrepresentation on their part,) stand in the shoes of the bank, and are subrogated to their rights.

The judgment of the special term, (MORRIS, J.,) in favor of the plaintiffs, should be affirmed with costs.

DAVIES, J. concurred.

PEABODY, J., (dissenting.) This action was brought on a promissory note, by indorsees against an indorser. The plaintiffs held the note prior to its maturity, and before it fell due, indorsed and transferred it to the Chemical Bank, who held and owned it when it fell due. Tallman, the notary of the bank, at the maturity of the note demanded payment of it, properly, and the next day inquired at the Chemical Bank where the defendant resided, and where notice of protest should be served on him, and was answered by the bank that they did not know. He then gave the plaintiffs notice of the non-payment and inquired of them where he should serve notice on the defendant, and

Beale *v.* Parish.

was told that the defendant resided either at Dunkirk or Buffalo, and was requested by them to serve notice on him at both these places, which he accordingly did. This information was erroneous. The defendant resided at Canandaigua, and the plaintiffs were aware that he resided there.

It is not pretended that the defendant actually received any notice of the non-payment, or that any such notice was sent to him at his place of residence. On the contrary, it is conceded that the notices sent were misdirected, and sent to places where he did not reside. To avoid the consequence of this failure to give due notice, the plaintiffs show that the note, when it fell due, was owned by the Chemical Bank, and that the bank by their agent, Tallman, the notary, used due diligence to ascertain the place of the defendant's residence, that they might send him notice ; that he failed after the use of such diligence to ascertain it, and hence the failure and inability of the bank to give the notice. This reasonable effort on the part of the bank they say was equivalent to notice, as between the bank and the defendant, and fixed the liability of the defendant to the bank ; and that they (the plaintiffs) having received the note from the bank after it became due, are subrogated to the rights of the bank. This reasoning would be correct if the plaintiffs had been strangers to the note until after it was due, and had then taken it from the bank as purchasers. They would then have taken all the rights of the bank against the defendant as they were fixed at the time of the purchase, and the bank having, by the use of due diligence to ascertain the residence of the defendant, fixed his liability as if notice had been given the plaintiff or any one else, being a purchaser from it, would acquire its rights against the defendant.

But the evidence shows that the plaintiffs indorsed the note to the bank, and consequently that they were parties to it before and at the time it became due ; that they having indorsed it to the bank, and being themselves duly notified of its non-payment by the maker, paid it and took it up as indorsers. The plaintiffs, therefore, did not take as purchasers from the bank, but by virtue of their contract as indorsers, made prior

to the maturity of the note. Their rights as holders, then, are to be determined with reference to this relationship, as created by their previous connection with the paper. As to the bank they were indorsers, and their liability to it was contingent only on demand of payment being duly made of the maker, and notice of the non-payment being duly given to them. These conditions appear to have been fulfilled by the bank, and the liability of the plaintiffs made absolute. The plaintiffs, in performing their contract as indorsers, by paying the bank, became entitled to it as holders, against the prior parties to it. What then was their relation to the defendant? This depends on the contract made by him when he transferred it. He indorsed it, either to the plaintiffs or some intermediate indorsee through whom they take it. As to the defendant, the plaintiffs were his indorsees and the defendant to them was an indorser. This is the contract originally made, and it remains as it was made. The rights of the plaintiffs, then, are those of an indorsee against his indorser, and arise from the original contract of indorsement, and not from a purchase by them from the bank. As indorsees of the defendant their rights against him were not absolute, but contingent on his causing a proper demand to be made and notice of non-payment. He, by indorsing, contracted with his indorsee and all subsequent holders, that if it was not paid at maturity, and payment was duly demanded, and notice of non-payment was duly given him, he would pay, instead of the maker.

The defendant had a right to notice of the non-payment, and any holder subsequent to him could give him that notice; and any one subsequent to him who wished to hold him was bound at his peril to give him the notice, if he could, with the use of reasonable diligence, do it. The plaintiffs could have given this notice, for they knew where he resided. They were notified of the non-payment in time for the purpose. They have failed to give the notice, and offer no excuse for the omission. But they say that the bank attempted to give it and failed, from want of the requisite knowledge. The bank, however, they say, used the requisite efforts and discharged their duty,

Beale *v.* Parish.

and the defendant was liable to them. This is very probable. The law dispenes with the notice from a party who cannot ascertain how to give it, and as to such a party, the omission to give the notice does not operate to discharge the indorser. The inability of such a party excuses him. But the inability of one party does not excuse the omission of another who has the ability. The defendant would have been liable to the bank in a suit by them, but it does not follow that he is liable to the plaintiffs. The bank has done its duty in the use of diligence. The plaintiffs have not done theirs, and by their failure the defendant has lost the benefit of his notice. The law allows each party one day in which to notify any prior party of the non-payment. The plaintiffs were notified by the bank, in due time. They, if they wished to hold him, should have notified the defendant within one day thereafter, and his liability to them would thereby have been fixed. He in time would have notified the indorsers before him, if such there were, and have perfected his rights against them, and could have urged his claim against them or the maker, at once, and thus have made the most of any rights he might have had. He had a right to this notice from any one who would hold him liable. His failure to receive it may have caused him to lose his right of recourse to other parties. Prior indorsers may have been discharged by his omission to notify them. This notice may have been of vital importance to him, in various ways. The plaintiffs could have given it. They knew where he resided and could be served, and they must take the consequences of their neglect. But they did, perhaps, worse than omit their duty. They carelessly misdirected the notary who inquired of them, and who, for the purpose of giving the notice, was the agent not only of the bank, but of the plaintiffs themselves, and of any other party to the note who had an interest in having the notice given. Knowing where notice should be directed, they caused it to be sent wrong, by misinforming the notary.

If the bank, or any holder subsequent to them, had actually given the notice, it would have enured to the benefit of the plaintiffs or any other holder; but the bank's excuse for not

giving, to wit, inability, does not enure to the benefit of a party like the plaintiffs, to excuse them. They had the ability and could have given it. Having omitted to give it, the defendant is not liable to them.

Judgment affirmed.

[NEW YORK GENERAL TERM, March 2, 1857. *Roosevelt, Davies* and *Peabody*, Justices.]