GUS WEISS, JR.

*v.*

BROADWAY NATIONAL BANK et al.

(*Nashville,* December Term, 1958.)

Opinion filed March 12, 1959.

DAN GARFINKLE and Z. T. OSBORN, JR., Nashville, for appellant.

DENNEY & LEFTWICH, Nashville, JACOBS H. DOYLE, Guardian *ad litem*, Nashville, for appellees.

MR. JUSTICE BURNETT delivered the opinion of the Court.

In this suit the Bank sued the appellant and others for the construction of a Holographic Will of Ella Roth. The will reads as follows:

"Should anything happen to me want Mr. Gus Weiss to open box and dispose of contents as he sees fit too.

"Ella Roth
"Mrs. Ellen R. Bussell."

Prior to the institution of this suit for construction of this will the Bank and probated the will and qualified as administrator C. T. A. By stipulation it is shown that Gus Weiss, Jr., is the only child of Gus Weiss who is named in the will; that Ella Roth was employed for many years prior to death at the Gus Mayer Store in Nashville, Tennessee, which was during her adult life; that the Gus Weiss named in the will died in September, 1955, prior to the death of Ella Roth; that the father and mother of Ella Roth had predeceased her and that her father's brothers and sisters had likewise predeceased her. She left no brothers and sisters and none of her brothers and sisters left issue surviving her.

The suit was filed against Weiss, Jr., as the only child of his father and against various others who were collateral relatives of Ella Roth. A Guardian *Ad Litem* was appointed for one of these incompetent heirs and joins with the other collateral heirs of Ella Roth in presenting this case for the appellees.

The Chancellor construed the will as granting to Mr. Gus Weiss (the one named in the will), a power of appointment, and found that since Mr. Weiss predeceased the testator, the power of appointment did not survive, consequently the testator, Ella Roth, died intestate as to the contents of the box mentioned in her will.

■ Cases of this State support the general proposition that where the first taker in a will has,

" 'the absolute power of disposition,' and the terms of the devise, bequest, or conveyance to him are appropriate to carry the fee, or if personalty the analogous interest, he takes the property absolutely and an attempted limitation over of anything remaining undisposed of, or of the whole property if undisposed of, is void." 17 A.L.R.2d 36.

A long comprehensive note citing cases from many jurisdictions will be found in this annotation. Among the cases from Tennessee cited in support thereof are: *Smith v. Bell,* 1827, 8 Tenn. 302, 17 Am. Dec. 798; *Eaton v. Nashville Trust Co.,* 145 Tenn. 575, 238 S.W. 865; *Remke v. Remke,* 11 Tenn.App. 301.

We have read many of these cases including all the Tennessee cases we could find on the subject, many of which will hereinafter be referred to. In *Smith v. Bell, supra,* this Court held that:

"If the first taker has power during his life to dispose of the property absolutely, it is not within the power of the Court to interfere for the preservation of it during the life estate. In all such cases the rule is, that the devise over is void, and the first taker has the estate in fee. In this construction no distinction has been made between goods and land. * * *

"Here a rule of law interposes which controls the intention of the testator; * * *."

The Court then sets up a case to test the principle applied wherein it is shown that if the first taker disposes of slaves (in that case) and then the one who is to take after she disposes of the property brought a suit in *detinue* to recover those slaves she could not recover

those slaves. As shown in the last portion of the sentence above quoted from that opinion this Court over one hundred years ago conceded that this rule defeated the intention of the testator but was a necessary rule of law.

In *Ogilvie v. Wright,* 140 Tenn. 114, 203 S.W. 753, 754, this Court again held in a case where the testator left his estate to his widow;

> "* * * and it is my wish that she do with said property as she may think best, and it is further my wish and desire that at the death of my wife that all our estate, * * * shall go to our adopted daughter, Jessie * * *,"

gave the wife the power of absolute disposition and that Jessie did not take a remainder. The Court in that case said:

> "Mrs. Wright, took title in fee simple, since the woods expressly confer the power of absolute disposition."

This, it seems to us, is the test, whether or not under the words given in the will the power of absolute disposition is given to the devisee or donee. When such terms do appear without other qualification it seems that under our authorities that the estate is absolute in the donee. To the same effect see *Meacham v. Graham,* 98 Tenn. 190, 39 S.W. 12; *Hodges v. Stegall,* 169 Tenn. 202, 83 S.W.2d 901, 100 A.L.R. 339; *Bradley v. Carnes,* 94 Tenn. 27, 27 S.W. 1007.

There are many jurisdictions outside of this State which hold to the contrary.

■ The brief of the appellant quotes from Theobald on Wills (8th Edition) the rule thus:

"1. A devise of lands to be at the discretion of A. or of personal property to be at the disposal of A. or to be disposed of as A. thinks fit without any direct gift to A. gives A. the absolute property. *Whisken and Clayton's Case,* 1 Leon, 156, 1588; 74 Eng.Reprint, 144; *Nowlan v. Walsh,* 4 De G. & S. 584, 1851; 64 Eng.Reprint, 967; *In re Maxwell's Will,* 24 B. 246, 1957; 53 Eng.Reprint, 352; *Kellett v. Kellett,* L.R. 3 H.L. 160, 1815; 3 Eng.Reprint, 1055."

Thus it would seem to us that in the will quoted in the outset hereof which contains the phrase "and dispose of contents as he see fit too.", would unquestionably have the effect of creating a fee simple title, or, as to personalty, an absolute property therein. While there is no direct gift of any part of the property to Mr. Weiss, all of it is to be turned over to him to "dispose of contents as he sees fit too."

■ As noted above, the learned Chancellor held that this provision gave the heirs of Mr. Weiss no right to use the property because Mr. Weiss was dead and this was a mere power of appointment and since he is dead and the power of appointment was personal it could not be executed. We, after several days of study and reading the authorities and reading and re-reading the language herein, have concluded that this view of the Chancellor was erroneous. There is no direction that Mr. Weiss shall distribute the property or any part of it according to the law of distribution or in any other particular manner. Indeed, there is no direction at all as to how he must distribute the property. It merely is,

that he is to go to the box and get it "and dispose of contents as he sees fit too." In other words he has the absolute discretion at his disposal as to what he will do with the property. It is his, outright, to do with as he sees fit.

There are no words in this will expressing any intent on the part of Miss Roth to create a trust. There are no direct fiduciary expressions. There are no precatory words such as words of entreaty, wish, expectation, or recommendations. There are no words indicating that Mr. Weiss is given the power to use or to hold this property in trust or as a trustee. There is no language controlling his distribution of this property, or requiring him to give any part of it to any other person, or denying to him the beneficial ownership of it. This being true—the absolute power to dispose of the corpus of the property as he sees fit—conveys an absolute interest in the property to Mr. Weiss.

In answer to the holdings of the above cases and others it is the very plausible contention of the appellees, it was the finding of the Chancellor, that under a proper construction of this paper writing that it was not a gift to Gus Weiss but was a mere naked power of appointment. It is argued and said, which is true, that under each of the cases above cited in the will which was being construed it was held that there was a gift in the first taker and thereafter an attempted limitation over of this gift. The appellees admit that under the law of this State where there is an outright gift and an attempted limitation over the first taker does acquire a fee in the property.

The argument is that the testatrix was an educated but lay person, working in a clothing store, and that if she had intended to make a gift to Gus Weiss it was only reasonable and logical to assume that she would have used the obvious words "I give to Gus Weiss". It is true these are the words ordinarily used by a layman for the purpose of creating a gift. What did the testatrix mean when she used the words "open box and dispose of contents as he sees fit too."?

On settled principles, the wishes of a testatrix, as gathered from the will itself, are to be followed, if they violate no public policy or no positive rule of law. It is the cardinal principle of construction that doubt of whether a gift was intended is to be resolved in favor of testacy and against intestacy. Doubt in a will is resolved against a limitation and in favor of an absolute estate. *Cannon v. Cannon,* 182 Tenn. 1, 184 S.W.2d 35; *Williams v. Williams,* 167 Tenn. 26, 65 S.W.2d 561.

The absolute ownership of property is the unrestricted power to dispose of it at one's discretion. A person having unlimited power to dispose of property is the owner of the property and absolute ownership is inconsistent with a limitation over.

Ella Roth, testatrix, died on April 4, 1957. Gus Weiss the devisee in this will or the person named there, died in September, 1955. The will of Ella Roth therefore remained as it was written prior to the death of Gus Weiss for nearly two years after his death and before the death of the testatrix. Is it not more reasonable to assume than not, to say that if she had intended something different she would have destroyed this document during that period of time than to have kept it in her

lock box for that length of time and then died, if she had wanted a different disposition made of her property? It is not always easy and understandable to know just exactly what words would be necessary to constitute a gift. A gift might be made without any words. Thus it seems more plausible to us to conclude that in view of the length of time between the death of the donee or the death of the donor or testatrix, that if this had not been intended as a gift or had been intended merely as a naked power of appointment—there is nothing in the terms of the instrument of what the appointment was for or what not—and clearly under the rule of law applicable in this case when the person has the absolute right to do with as he sees fit this constitutes absolute ownership of the property. This being true we think the Chancellor was in error in concluding that this was a mere naked power of appointment.

Obviously it must be and is the contention of the appellant that our antilapsed legacy statute, Section 32-306, T.C.A., is applicable and that the bequest to Gus Weiss who predeceased the testatrix went to his son as the issue surviving. We take it as conceded that if Gus Weiss had survived the testatrix then he would have been entitled to the bequest or legacy and if this lapsed legacy statute is applicable then the son of this devisee is entitled thereto. Insofar as here applicable this statute (Section 32-306, T.C.A.) reads:

"Whenever the devisee or legatee to whom, or any member of a class to which, an immediate devise or bequest is made, dies before the testator, or is dead at the making of the will, leaving issue which survives the testator, said issue shall take the estate or interest

devised or bequeathed which the devisee or legatee or the member of the class, as the case may be, would have taken, had he survived the testator, unless a different disposition thereof is made or required by the will."

Obviously there is no different disposition made or required under this will.

■ Under this statute the issue that survives a deceased devisee or legatee takes as the substituted legatee of the deceased ancestor just as if their names had been inserted in the will by the testatrix herself. This statute is not for the benefit of Gus Weiss, deceased, the dead legatee, but is intended to safeguard the interests of those who take under him.

■ The Courts of the Country are at variance as to whether or not a statute of the kind should receive a liberal or strict construction. We think that the Virginia Court in *Wildberger v. Cheek's Ex'rs*, 94 Va. 517, 27 S.E. 441, 443, correctly held in reference to such a statute that:

"The statute is in furtherance of what may fairly be presumed to have been the intention of the testator, and, in order to effect its object, it should be construed liberally."

And it was further said in this case in reference to a similar statute to ours, that:

"This section made a sweeping change from the common-law doctrine of lapsed or void legacies, declaring what the law should be in the future in no uncertain language, and our courts cannot make excep-

574

tions and uphold distinctions where the plain letter of the law recognizes none."

In Page On Wills, Lifetime Edition, Vol. 4, Sec. 1422, p. 176, of these lapsed legacy statutes the author has this to say:

"These statutes are said to be based upon the presumption that testator would have made provision for certain relatives of the deceased beneficiary, if his intention had been called to the death of the beneficiary, and he had had the opportunity to make such provision."

 Ella Roth is presumed to have known from September 15, 1955, the date of the death of Gus Weiss, up to her death on April 4, 1957, that Gus Weiss was dead. If she wanted to make a change in what she had said and done in this will, why did she not do it? To us, leaving the will as was, is a complete answer and it therefore, in our view of the matter, necessitates the holding that this was an absolute gift to Gus Weiss and he, having predeceased the testatrix, his son under the lapsed legacy statute succeeds to the property.