**C. B. HUGGINS, IV, Executor of the Estates of Camillus B. Huggins and Augusta M. Huggins, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**Nos. 81–5611, 81–5612.**

United States Court of Appeals, Sixth Circuit.

Argued April 30, 1982.

Decided Aug. 10, 1982.

Granville S. R. Bouldin, Murfreesboro, Tenn., for plaintiff-appellant.

John F. Murray, Richard Farber, William P. Wang, U. S. Dept. of Justice, Tax Div., Civ. Trial Section, Washington, D. C., Joe B. Brown, U. S. Atty., Nashville, Tenn., for defendant-appellee.

Before MERRITT and KENNEDY, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

These consolidated appeals involve federal estate taxes collected from the executor of the estates of Camillus B. Huggins and his wife, Augusta M. Huggins, residents of Murfreesboro, Tennessee. The executor of both estates, C. B. Huggins, IV, sued for a refund of federal estate taxes he alleges to have been assessed and collected erroneously by the Internal Revenue Service.

District Judge L. Clure Morton granted summary judgment in favor of the Government in both actions. The executor appeals.

I.

The principal issue on appeal is the proper construction of the will of Jessie W. Huggins, uncle of Camillus B. Huggins. Jessie W. Huggins and his wife had no children. His will was dated April 14, 1949, and probated April 30, 1957. After making certain bequests not involved in this litigation, the uncle directed that his remaining estate be divided into two "equal portions;" almost all of the first portion was placed in a marital deduction trust over which his wife, Marianne Bonner Huggins, was given an unlimited power of appointment. The second portion was placed in a trust of which Camillus B. Huggins was one of the beneficiaries. Jessie W. Huggins disposed of the second portion of his estate as follows:

SECOND PORTION

The second portion into which my estate shall be divided after payment of the charges set forth in Items I, II and III, I hereby will, devise and bequeath to my beloved wife, Marianne Bonner Huggins, C. B. Huggins, Jr. and Jesse W. Huggins, II, in trust to be held, managed, controlled, invested, and reinvested by them with the income to be disposed of as follows, to-wit:—

To my beloved sister, Leila Huggins Batey the sum of One Hundred ($100.00) Dollars per month as long as she may live.

The remainder of the net income of this trust unless used as hereinafter authorized, shall became principal and shall accumulate as part of the corpus of said trust. This trust shall terminate upon the death of my beloved wife, Marianne Bonner Huggins and at that time be disposed of as follows:—

To my niece, Sara Rucker Pearson, as a token of my affection for her and her father and her deceased mother, the sum of One Hundred ($100.00) Dollars. The net balance of the original principal of said trust at the time of the death of my wife and after the payment of the other legacies hereinabove set out, *I hereby will, devise and bequeath in fee simple one-third to my nephew, C. B. Huggins, Jr.,* one-third to my nephew, Jesse W. Huggins, II, and one-third to my niece, Lib Huggins Barham *and in the event that either one of them shall predecease me or shall die after my death, but prior to the termination of this trust, his or her share shall descend or be distributed to his or her heirs or divisees as the case may be.*

The accumulated income of this trust I hereby will, devise and bequeath as follows; Onehalf to be disposed of as directed in the last will and testament of my beloved wife, Marianne Bonner Huggins; the other onehalf, one-third to my nephew, C. B. Huggins, Jr., in fee simple, one-third to my nephew Jesse W. Huggins, II, in fee simple, and one-third to my niece, Lib Huggins Barham in fee simple, and in the event that either one of them shall predecease me or shall die

after my death and prior to the termination of this trust, his or her share shall descend or be distributed to his or her heirs or devisees as the case may be. I expressly direct that these "Portions" shall be made up as far as possible of exactly similar stocks, bonds, notes, properties and other assets, it being my intention that so far as possible the investments be identical in each Trust. [Emphasis added]

These appeals present the question of whether the above emphasized language passed an interest to Camillus B. Huggins which was taxable to his estate.

Camillus B. Huggins died testate on May 25, 1975. Any interest in the trust corpus[1] he might have received under the will of his uncle passed to his wife, Augusta M. Huggins, under the residuary clause of his will. Augusta M. Huggins died November 3, 1975. The appeal of her executor presents the question of whether she received any interest in the trust corpus which is taxable to her estate. Marianne Bonner Huggins, widow of Jessie W. Huggins, survived both Camillus B. and Augusta M. Huggins. She died January 1, 1980.

The executor filed a federal estate tax return on behalf of the estate of Camillus B. Huggins, reporting and paying $47,915.66 in federal estate taxes. The executor also filed an estate tax return on behalf of the estate of Augusta M. Huggins, reporting and paying $57,787.16 in federal estate taxes. The executor did not include any interest in the corpus of the "Second Portion" trust in his report for either estate.

Upon audit, the Commissioner of Internal Revenue assessed a deficiency against both estates: $14,595.93 against the estate of Camillus B. Huggins and $24,189.39 against

---

1. On September 15, 1958, Camillus B. Huggins entered into a contract with Marianne B. Huggins, the wife of Jessie W. Huggins, and the other trust beneficiaries. In that contract, the parties came "to an amicable agreement among themselves with respect to the construction of the ambiguous and contradictory sections of the Will .... "Basically, the parties agreed to what should be included in the 1st and 2nd portions of the will. Further, they agreed that

one-half of the income from the second portion of the estate would be distributed to the two nephews and the niece and one-half to the widow as it accrued "without the necessity of having to accumulate and become a part of the principal or corpus [of the 2nd Portion trust]." The widow, Marianne B. Huggins, also agreed to bequeath to the other beneficiaries any unexpended income from the 2nd portion of which she had the power to dispose by will.

the estate of Augusta M. Huggins. The Commissioner took the position that the will of Jessie W. Huggins created a vested transmissible interest in favor of Camillus B. Huggins in the trust corpus under Section 2033 of the Internal Revenue Code[2]; or in the alternative that the will created a general power of appointment in Camillus B. Huggins which is includible in his gross estate under Section 2041 of the Internal Revenue Code, 26 U.S.C. § 2041. The Commissioner valued the interest at $96,946.04.

The executor paid the estate tax deficiencies and filed claims for refund. Upon the denial of claims, these suits for refund were instituted in the district court.

The district court granted summary judgment in favor of the Government on the ground that under 26 U.S.C. § 2041 the will of Jessie W. Huggins created a general power of appointment in Camillus B. Huggins over the remainder interest in his share of the principal of the trust created by the will; and that the Commissioner properly included the value of this property in the estates of both Camillus B. Huggins and Augusta M. Huggins. We affirm on the Commissioner's alternate ground of assessment: that the will created a vested transmissible interest which is included in his estate under 26 U.S.C. § 2033 and also in the gross estate of his wife. We do not reach the issue of whether Camillus B. Huggins had a general power of appointment.

II.

"State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing taxed." *Morgan v. Commissioner,* 309 U.S. 78, 80–81, 60 S.Ct. 424, 425–426, 84 L.Ed. 585 (1940). We first must look to Tennessee law to ascertain the nature of the estate taken by Camillus B. Huggins under the will of his uncle. Then we must look to

federal law to determine whether the interest is to be taxed.

■  The cardinal rule in the construction of wills in Tennessee is that the court should seek to discover the intention of the testator. To this rule all other rules of construction must yield. *Durell v. Martin,* 172 Tenn. 97, 102, 110 S.W.2d 316 (1937); *Hoggatt v. Clopton,* 142 Tenn. 184, 192, 217 S.W. 657, 659 (1919).

The above quoted language of the will of Jessie W. Huggins bequeathed a one-third interest to Camillus Huggins in the unexpended corpus "in fee simple." The language of the testator was: "I hereby will, devise and bequeath *in fee simple* one-third to my nephew, C. B. Huggins, Jr....." (Emphasis supplied). In addition, the next paragraph of the will, disposing of the accumulated income, bequeathed "one-third to my nephew C. B. Huggins, Jr., *in fee simple.*" (Emphasis supplied).

Chief Justice Grafton Green, one of Tennessee's greatest judges, wrote: "In Tennessee a title in fee or in fee simple is a full and absolute estate, beyond and outside of which there is no other interest, or even shadow of right." *Malone v. Peay,* 157 Tenn. 429, 437, 7 S.W.2d 40 (1928).

Black's Law Dictionary (5th Ed. 1979) defines fee simple as follows: "A fee simple absolute is an estate limited absolutely to a man and his heirs and assigns forever without limitation or condition. An absolute or fee simple estate is one in which the owner is entitled to the entire property with the unconditional power of disposition during his life, and descending to his heirs and legal representatives upon his death intestate. Such estate is unlimited as to duration, disposition, and descendibility."

■  We conclude that the language of the will of Jessie W. Huggins evidences an intention to give Camillus B. Huggins a vested, transmissible fee simple interest in the unexpended corpus of the trust, which

---

**2.** 26 U.S.C. § 2033 provides:

§ 2033.  Property in which the decedent had an interest

The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death.

is taxable as part of his gross estate under 26 U.S.C. § 2033.

The appellant executor argues that the provision in the will of Jessie W. Huggins to the effect that if his nephew should predecease him or die after him but prior to the termination of the trust, his nephew's share would "descend or be distributed to his . . . heirs or devisees as the case may be," precludes a finding that the interest of Camillus B. Huggins was vested or transmissible. The executor contends that this provision indicates an intention on the part of the testator to postpone the vesting of the estate until the death of the widow, the time at which the trust would terminate.

We hold the provision for the descent or distribution of the nephew's share to his heirs or devisees "as the case may be" to be wholly consistent with an intention to bequeath a vested transmissible interest. The testator referred to the one-third interest in the corpus as "his [the nephew's] . . . share." Further, the right to have one's property descend under the laws of intestate succession if he dies intestate, or to the beneficiaries in his will if he dies testate, is an incident of the ownership of a vested, fee simple property interest. Thus, as the Government pointed out in its brief, the provision "merely makes explicit what is implicit in the ownership of a vested property interest."

Our conclusion that Camillus B. Huggins received a vested transmissible interest in the corpus is supported by numerous Tennessee rules of construction. In construing a will, the court will favor a construction that will effect a quick vesting of an absolute estate so far as that construction is possible in light of the testator's declared intent. *Johnson v. Painter*, 189 Tenn. 307, 312, 225 S.W.2d 72 (1949); *Whitman v. Young*, 1 Tenn.Ch. 586, 587 (1875); doubt in a will is resolved against a limitation and in favor of an absolute estate, *Weiss v. Broadway National Bank*, 204 Tenn. 563, 571, 322 S.W.2d 427 (1959); *Williams v. Williams*, 167 Tenn. 26, 31, 65 S.W.2d 561 (1933); a clear devise of a fee simple estate will not be cut down by subsequent ambiguous language, *Comford v. Cantrell*, 177 Tenn. 553, 556, 151 S.W.2d 1076 (1941); the presumption of the law is against the intention to postpone the vesting of an estate devised, if the language of the will leaves the question in doubt, *Taylor v. Dickerson*, 167 Tenn. 121, 123, 67 S.W.2d 137 (1934); to cut down an estate already granted in fee simple, subsequent language in the will must be "clear, unmistakable and certain," *Meacham v. Graham*, 98 Tenn. 190, 206, 39 S.W. 12 (1897); where the language of a will is equally consistent with vesting a future interest upon the testator's death, or with the interest remaining contingent until the date of distribution, "Tennessee courts always have broken the deadlock in favor of vested interests." *Nicholson v. Nicholson*, 496 S.W.2d 477, 479 (Tenn.1973).

### III.

In further support of his argument that the interest of Camillus B. Huggins was contingent, the executor points to the fact that the will of Jessie W. Huggins gave the trustees power to encroach upon the corpus for the use and benefit of the widow should the need arise. Thus, the appellant executor argues, the entire corpus might have been consumed and Camillus B. Huggins would have received nothing.

We find this argument unpersuasive. The testator, Jessie W. Huggins, made generous provisions for his widow in his will. She received most of the income from the trust created out of the "first portion" of the estate. The testator expressed a desire that his widow always would have an income of at least $1000 per month, but the income from the trust created from the "second portion" of the will could be used only if the income from the "first portion" was not sufficient to provide an income of $1000 per month. The trustees were given the power to invade the corpus of the trust created out of the "second portion" only if in the opinion of the majority of the Trustees it was "necessary in order to maintain my wife in the manner in which she has been accustomed to living, or . . . in the event of an emergency . . . ."

 The fact that the Trustees had this power to invade the corpus for the benefit of the widow did not render the interest of Camillus B. Huggins contingent. It merely made it possible for the value of his interest to have been diminished. His interest remained vested subject to partial or complete divestment in the event the trustees exercised their power to invade the corpus. The widow was not given an unlimited power of disposition which, coupled with her life estate, would have given her "a fee absolute as to right of disposition" under T.C.A. § 66-1-106 (formerly 64-106). Encroachment upon the principal had to be necessary in the opinion of the majority of the three trustees, two of whom, Camillus B. Huggins and Jessie W. Huggins, II, were also the recipients of shares in the "second portion" trust.

Even if the provision for invasion of the corpus of the "second portion" trust had rendered the interest of Camillus B. Huggins contingent, that contingency could not have occurred after September 15, 1958. On that day, Camillus B. Huggins, Marianne B. Huggins (widow of Jessie W. Huggins) and the other trust beneficiaries entered into a contract, see n. 1, in which she "expressly waiv[ed] and recounc[ed] all privilege or right to have her income supplemented from interest or principal of the Trust as provided by Item 6 of the 2nd Portion of said Will or Trust." Thus, exhaustion of the "second portion" trust was no longer possible almost seventeen years before the death of Camillus B. Huggins in May 1975.

### IV.

We further hold that the provision in the will that the trust corpus and income were to be distributed after the death of the testator's widow does not mean that the testator intended for the interest of his nephew to be contingent upon the nephew being alive at the time of the death of the widow. We conclude that the reference to the time of disposition merely described the time for actual possession and enjoyment of the vested interest of Camillus B. Huggins

which had been bequeathed to him in fee simple under the express language of the will. *See Nicholson v. Nicholson, supra,* 496 S.W.2d at 479; *Jackson v. Jackson,* 219 Tenn. 237, 243, 409 S.W.2d 172, 175 (1966); *Maynor v. Vaughn,* 159 Tenn. 281, 286, 17 S.W.2d 910 (1929).

### V.

For the reasons stated above, we affirm the decision of the district court on the ground that § 2033 of the Internal Revenue Code, evidences a Congressional intent to include the interest received by Camillus B. Huggins under the terms of his uncle's will in his gross estate for estate tax purposes.

The judgment of the district court is affirmed. No costs are taxed. The parties will bear their costs on this appeal.