IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 9, 2001 Session

**IN THE MATTER OF THE ESTATE OF NELLIE K. ELLIS**
**CHARLES W. MOORE, ET AL. v. CLYDE GREEN, ET AL.**
**An Appeal from the Circuit Court for Davidson County**
**No. 99P-1461     Frank Clement, Jr., Judge**

---

**No. M2000-01516-COA-R3-CV - Filed April 15, 2002**

---

This case involves the interpretation of a remainder interest granted in a will. The decedent's husband bequeathed to the decedent a life estate in stock in a family-owned business, with the remainder to go 50% to his "living heirs" and 50% to "some deserving person in the music department at Belmont College." After her husband's death, the decedent purchased the remainder interest in the stock from all of the remaindermen. By virtue of this purchase, the decedent presumed that she owned the stock outright. At her death, her will included a bequest of the stock. Her heirs brought this declaratory judgment action, seeking a declaration that the decedent did not own the stock at her death. They argued that the decedent's purchase of the remainder interest in the stock was invalid because the remaindermen did not own a vested interest in the stock at the time of the husband's death. The trial court found that the case was barred by the statute of limitations and that the decedent had, in fact, acquired 100% ownership in the stock. The heirs now appeal. We affirm, finding that the remaindermen in the husband's will acquired a vested, transmissible remainder interest in the stock at the husband's death.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY K. LILLARD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Homer R. Ayers, Goodlettsville, Tennessee, for the appellants Charles W. Moore and Linda Moore Maggart as executrix for the estate of William Herschel Moore, a/k/a Herschel Moore, deceased.

Grant W. Smith, Goodlettsville, Tennessee, for the appellants Ray Swing, Juanita Swing Sircy, Jeanne Swing Pennington, and James Edward Swing.

William H. Lassiter, Jr., of Lassiter, Tidwell & Hildebrand, PLLC, Nashville, Tennessee, for the appellee, Clyde Green.

William L. Harbison of Sherrard & Roe, PLC, Nashville, Tennessee, for the appellee, First American National Bank.

**OPINION**

This case involves the interpretation of the remainder interest granted in a holographic will. Clarence E. Ellis ("Clarence") and Nellie K. Ellis ("Nellie") were husband and wife. On July 1, 1986, at age eighty-five, Clarence died leaving a holographic will dated March 21, 1970. The will provided in pertinent part:

> I . . . Bequeath all my personal and real property if any to my wife Nellie K. Ellis for her lifetime to be used for _her_ comfort and lively hood [sic] and at her death one half the remainder to my living heirs and the other half to be put in trust in the First American National Bank of Nashville for some deserving person in the music department of Belmont College of Nashville Tenn.

(Emphasis in original). Thus, he devised all of his property in a life estate to Nellie, and 50% of the remainder to his "living heirs" and the other 50% to "some deserving person . . . of Belmont College." The principal asset of Clarence's estate was his 100% stock ownership in Ellis Funeral Home, Inc., a Tennessee corporation.[1]

On August 27, 1986, Nellie filed a petition to probate Clarence's holographic will. On September 18, 1986, she filed an application for a year's support and a petition for an elective share in the estate. Rather than pursue her two motions, however, Nellie obtained "Receipt and Waiver of Accounting" forms signed by each of the remaindermen who were living at the time of Clarence's death – his then-living heirs[2] and a Vice President of Belmont College on behalf of the "deserving person." In those waivers, each remainderman accepted a payment of $2,500 in exchange for his share in Clarence's estate. The waiver stated that the "payment represents . . . [t]he final and complete payment to which I am entitled. I will no longer have any claim against the estate as an heir, beneficiary or claimant. I hereby waive notice of the final accounting and direct the clerk to pass the account without my presence." On September 16, 1988, the probate court entered an order closing the estate of Clarence Ellis.

Until December 31, 1988, Nellie was the sole owner of the real property on which the funeral home was located on Nolensville Road in Nashville, Tennessee, and she leased the land to the

---

[1] At the time of its incorporation in 1972, the stock in the company was owned 60% by Clarence Ellis and 40% by W. E. Neal, Jr. In 1980, Neal sold his shares back to the corporation, and Clarence then became the sole shareholder in the company at that time.

[2] Clarence's only heirs at the time of his death were Ural A. Ellis, Ivy Ellis Holt, Leslie R. Ellis, and W. Raymond Ellis, who were his three brothers and sister.

funeral home for the operation of the business.[3]  On January 1, 1989, Nellie executed a warranty deed and installment note ("note and deed"), selling the Nolensville Road property to the corporation for $260,000, to be paid to her by the corporation in installments of $1,871.13 per month for thirty years.[4]

On January 6, 1989, Nellie executed her Last Will and Testament.  Believing that she owned outright the stock in the funeral home from her husband's estate, she bequeathed the stock in fee simple "to my friend, Clyde Green," who was president and manager of the funeral home at all pertinent times.  Regarding the debt owed to Nellie by the corporation on the note and deed, Nellie's will provided that "the remaining installments on the said note are to be cancelled and forgiven."[5] The rest and residue of her estate was bequeathed to the children of Mamie Moore and Ada Kemper Swing, Nellie's two sisters, namely:  Charles W. Moore, Linda Moore Maggart (as executrix for the estate of William Herschel Moore),  Jeanne S. Pennington, Juanita Swing Sircy, Ray Swing, and James E. Swing.[6]  Nellie's will provided that all of Nellie's legal debts, including the estate taxes, were to be paid from her residual estate.

On March 13, 1998, the First American National Bank ("First American"), as Nellie's conservator, filed a petition for approval of purchase of real estate in probate court, requesting that the court approve the purchase by Ellis Funeral Home, Inc., of a house and lot on Grandview Avenue in Nashville, Tennessee, for $50,000.  On April 9, 1998, the probate court approved that sale, based on First American's representation that Nellie was the sole owner of Ellis Funeral Home, Inc.

On May 28, 1999, Nellie died at age ninety-four.  On September 3, 1999, Clyde Green filed a petition to probate her Last Will and Testament.  Though the plaintiffs contested the will, that contest is not at issue in this appeal.

On April 10, 2000, Nellie's living heirs (collectively "plaintiffs") filed in the probate court below a complaint for declaratory judgment and rescission, cancellation, and/or reformation of the note and deeds for the Nolensville Road property and the Grandview Avenue property.  The complaint named as defendants Clyde Green, the unknown living heirs of Clarence E. Ellis, the undesignated "deserving" person at Belmont College, Ellis Funeral Home, Inc., and the First

---

[3]Nellie and Clarence Ellis also maintained a residential apartment on that premises behind the funeral home.

[4]The appellants infer that this transaction was unduly influenced by Nellie's attorney and former conservator, Walter S. Clark.  The evidence indicating undue influence is clearly insufficient, and this argument is without merit.

[5]Actually, Nellie bequeathed a life estate in the installments to her sister, Mamie Moore.  However, Mamie predeceased Nellie, so the debt was canceled under the terms of Nellie's will.

[6]Though her sister, Mamie Moore, was to share in the residuary, Mamie predeceased Nellie.  Mamie's share, therefore, was to go to her own children under the terms of Nellie's will.

American National Bank.[7]  The plaintiffs asserted that Nellie never owned the stock in Ellis Funeral Home, Inc., through her husband's estate because the will bequeathed to her only a life estate in the stock.  At her death, the plaintiffs claimed, the stock was owned 50% by Clarence's unknown living heirs at the time of *Nellie's* death and 50% by the unknown "deserving person" at Belmont College. In making this claim, the plaintiffs alleged that "the payments by Nellie K. Ellis to Belmont College did not satisfy the requirements of the Will of Clarence E. Ellis, since the gift was to become effective at the termination of the life estate of Nellie K. Ellis and was to a '. . . deserving person . . .', which has yet to be identified, and not to Belmont College."  The complaint further alleged that "the payments made by Nellie K. Ellis to the brothers and sister of Clarence E. Ellis did not satisfy the requirements of the Will of Clarence E. Ellis, since the gift was to become effective at the termination of the life estate of Nellie K. Ellis and was to the 'living heirs' of Clarence E. Ellis, which could only be identified at the moment of death of Nellie K. Ellis."  In essence, the plaintiffs alleged that the interests of the remaindermen in Clarence's will were not vested and, therefore, not transferable at the time of Clarence's death.

In the complaint, the plaintiffs sought several forms of relief.  First, they sought declaratory relief, asking the trial court to determine the ownership of the stock in Ellis Funeral Home, Inc., and to vest ownership of the stock in the rightful parties.  If the trial court concluded that Nellie did not own stock in the Ellis Funeral Home, Inc., the plaintiffs reasoned, this would remove the stock from the total asset value of the estate, thereby reducing the estate taxes to be assessed against the plaintiffs' residuary share of the estate.[8]  Moreover, because the note and deeds pertaining to the Nolensville Road property and the Grandview Avenue property were executed by Nellie based on the mistaken belief that she owned outright the stock in the funeral home, the plaintiffs argued that the deeds should be revoked, rescinded, or reformed so as to vest ownership and title to those properties in Nellie K. Ellis or her heirs.  Finally, the plaintiffs sought damages from First American for its alleged negligence in failing to determine at an early date the ownership of the stock in Ellis Funeral Home, Inc., and for its alleged mishandling of Nellie's affairs during her conservatorship.

On April 14, 2000, defendant Clyde Green filed a motion under Tennessee Rule of Civil Procedure 12.02(6) to dismiss the complaint for failure to state a claim upon which relief could be granted.  On May 25, 2000, after a hearing on the motion, the trial court granted the motion to dismiss, stating:

> Taking as true, for purposes of this motion, the allegations in the complaint for declaratory judgment filed by [the appellants], the Court finds that granting the relief

---

[7]The complaint initially listed W. E. Neal, Jr., as a defendant, claiming that he owned 40% of the stock in Ellis Funeral Home, Inc.  As we have indicated, however, it was discovered that Neal sold his stock back to the corporation in 1980, and that Clarence owned 100% of the stock in the funeral home at the time of his death.  Consequently, the plaintiffs abandoned their claim against that original defendant.  *See supra*, note 1.

[8]Alternatively, the plaintiffs alleged that the additional taxes due based on the erroneous inclusion of the stock in Nellie's estate should be paid by First American National Bank because of their negligent misrepresentations.

sought would require the Court to reopen the estate of Clarence Ellis and find that the distributions made in the estate of Clarence Ellis were improper. Mr. Ellis' estate was closed over ten years ago . . . with all persons having an interest in that estate waiving their rights in favor of Nellie K. Ellis. Therefore, the claims in the complaint, as a matter of law, are barred by the applicable statute of limitations. In addition, the gravamen of the complaint is that parties other than Nellie K. Ellis may have some interest in the stock of Ellis Funeral Home, Inc. As a matter of law, because all persons interested in the estate of Clarence Ellis waived their rights in favor of Nellie K. Ellis, she became the sole owner of Ellis Funeral Home, Inc. Accordingly, the complaint fails to state a claim on which relief can be granted.

Thus, the trial court dismissed the plaintiffs' complaint based on the applicable statute of limitations, as well as the finding that Nellie became the sole owner of the stock in Ellis Funeral Home, Inc., after the other persons interested in Clarence's estate waived their rights in her favor. The plaintiffs now appeal that order.

The pertinent facts on appeal are undisputed, and therefore the questions presented in this appeal are purely legal. Consequently, we review the trial court's decision *de novo*. **See State v. Levandowski**, 955 S.W.2d 603, 604 (Tenn. 1997); **Ridings v. Ralph M. Parsons Co.,** 914 S.W.2d 79, 80 (Tenn. 1996). In considering a motion to dismiss for failure to state a claim, a court must "construe the complaint liberally in favor of the plaintiff[s], taking all of the allegations of fact therein as true." **Randolph v. Dominion Bank**, 826 S.W.2d 477, 478 (Tenn. Ct. App. 1991). A motion to dismiss under Rule 12.02(6) "tests the legal sufficiency of a complaint; it admits the truth of all relevant and material allegations, 'but asserts that such facts do not constitute a cause of action as a matter of law.'" **Riggs v. Burson**, 941 S.W.2d 44, 47 (Tenn. 1997) (quoting **Pursell v. First American Nat'l Bank**, 937 S.W.2d 838, 840 (Tenn. 1996)); *see Humphries v. West End Terrace, Inc.*, 795 S.W.2d 128, 130 (Tenn. Ct. App. 1990). However, "inferences to be drawn from the facts or the legal conclusions set forth in a complaint are not required to be taken as true." **Riggs**, 941 S.W.2d at 47-48.

The trial court based its decision on two alternative grounds, the applicable statute of limitations and the legal disposition of the estate of Clarence Ellis. We first address the trial court's determination that Nellie owned 100% of the stock in Ellis Funeral Home, Inc., through the estate of her husband.

The plaintiffs argue on appeal that the "Receipt and Waiver of Accounting" forms signed by the remaindermen named in Clarence's will were invalid, because the clear language of Clarence's will indicates that the remainder interest was contingent until Nellie's death. Additionally, the plaintiffs contend that the bequest to "some deserving person in the music department of Belmont College" was not made to Belmont College itself, but to a person at the College, who could have been virtually anyone associated with the music department of the College, such as a student,

professor, secretary, or janitorial employee. As such, the plaintiffs argue that Belmont College had no authority to transfer of interest.

In response, the defendants argue that the remainder interest granted in Clarence's will vested in the remaindermen at Clarence's death. They assert that the bequest to the "living heirs" vested under the Tennessee class doctrine, which was modified by Tennessee Code Annotated § 32-3-104:

> Where a bequest, devise, conveyance, transfer or gift is made to a class of persons subject to fluctuation by increase or diminution of its number in consequence of future births or deaths, and the time of payment, distribution, vestiture or enjoyment is fixed at a subsequent period or on the happening of a future event, and any member of such class shall die before the arrival of such period or the happening of such event, and shall have issue surviving when such period arrives or such event happens, such issue shall take the share of the property which the member so dying would take if living, unless a clear intention to the contrary is manifested by the will, deed or other instrument.

Tenn. Code Ann. § 32-3-104 (2001). Under that statute, "a class takes a vested, transmissible interest in the remainder, unless the will unquestionably discloses [the] testator's intention that the interest remain contingent until the date of distribution." ***Nicholson v. Nicholson***, 496 S.W.2d 477, 479 (Tenn. 1973). Further, the defendants argue that the bequest to "some deserving person in the music department of Belmont College" vested in Belmont College because it was a "discretionary charitable gift" given to the College to choose, at its discretion, a charitable beneficiary. ***See*** Tenn. Code Ann.§ 35-13-105.[9]

The defendants maintain that leaving such discretion with Belmont College granted the College itself a vested, transmissible interest at the testator's death. Thus, because each of the named remaindermen had a vested interest in the funeral home stock at Clarence's death, the defendants conclude, then the signed waiver forms validly transferred the remainder interest in the stock back to the estate. After execution of the waiver forms, Nellie, the only heir of Clarence's estate, had both the life estate and the remainder. At that point, defendants argue, the remainder estate merged with the life estate, resulting in Nellie owning 100% of the stock as a matter of law.

---

[9] Discretionary Charitable Gifts.- When the donor makes a discretionary charitable gift the following provisions apply:

(1) The person to whom discretion is given shall choose the charitable beneficiaries and charitable purposes within a reasonable time after having accepted the duty to select the beneficiaries or purposes of the discretionary charitable gift.

Tenn. Code Ann. § 35-13-105(1) (2001).

The issue then becomes whether the remainder interest granted in Clarence's will was a vested, transmissible interest, so that each signed "Receipt and Waiver of Accounting" form effected a transfer of the remainder interest back to the estate. In *Nicholson*, noted above, the testator's will granted a life estate to his wife in certain stock and granted the reminder interest to two named individuals. The will provided that if the two named individuals predeceased the wife, the remainder would pass "to my heirs at law." *Nicholson*, 496 S.W.2d at 478. Of course, the two named individuals predeceased the wife. Prior to their deaths, the company purchased all rights and interests in the testator's stock from all of the remaindermen – the two named individuals as well as all of the testator's then-living heirs. *Id.* At the wife's death, the testator *husband's* then-living heirs, who were apparently not living at the time of the testator's death, sought to claim an interest in the stock, arguing that all remainder interests in the stock during the wife's lifetime were contingent until the wife's death, and therefore were not transmissible until the wife's death.

In *Nicholson*, the Tennessee Supreme Court held that the husband's will granted in the remaindermen an interest that vested at the testator's death. The Court explained:

> Prior to the enactment of [Tennessee Code Annotated § 32-3-104], Tennessee courts supported the so-called "Tennessee Class Doctrine," which held that remainder gifts to a fluctuating class of persons remained contingent until the time set in the will for distribution or payment of the gift. That doctrine has been significantly modified by [Tennessee Code Annotated § 32-3-104]. Tennessee case law since passage of the statute in 1929 has held that such a class takes a vested, transmissible interest in the remainder, unless the will unquestionably discloses [the] testator's intention that the interest remain contingent until the date of distribution.

*Id.* at 479 (citations omitted). Based on the language in the statute and the ensuing case law, the Court determined that the provision in the will directing "that said stock be distributed to my heirs at law at the date of death of my said wife" reflected an intention that the stock vest in those heirs who were alive at his own death, and that the clause "merely sets the time for possession . . . at the time of the widow's death." *Id.* The Court also found that "neither this isolated clause nor the will as a whole manifests a clear intention on testator's behalf to postpone the vesting of the interest until the wife's death." *Id.* The Court concluded that, where the language in a will implies "two different results with equal force, . . . in such cases of doubt, Tennessee courts have always broken the deadlock in favor of vested interests." *Id.* at 479-80 (citations omitted).

The plaintiffs assert that *Nicholson* is not controlling here because "a clear intention to the contrary is manifested by the will" in this case. Clarence's will bequests to Nellie a life estate, and "at her death one half the remainder to my living heirs . . . ." The plaintiffs argue that the phrases "living heirs" and "at her death" indicate that Clarence intended the remainder of his estate to become vested at the termination of the life estate – at Nellie's death.

While the plaintiffs' interpretation of the will is plausible, where the language in a will is ambigous, the *Nicholson* Court indicated a clear preference for interpreting such an instrument in a

manner consistent with a finding that the testator intended the remainder interest to vest at his death. *Id.*; *see also Huggins v. United States*, 684 F.2d 417, 421 (6th Cir. 1982) (finding that the remainder interest vested at testator's death and deferring to the rule that Tennessee favors a construction that will effect a quick vesting). In Clarence's will, we conclude that the use of the phrase "living heirs" means heirs living at Clarence's death, and the phrase "at her death" "merely sets the time for possession." *Nicholson*, 496 S.W.2d at 479. Likewise, the grant of a remainder interest to "some deserving person in the music department of Belmont College" was also vested and transmissible.

The plaintiffs also argue that the remainder interest granted to "some deserving person in the music department of Belmont College" was not effectively transferred to Nellie. The plaintiffs argue that the waiver form signed by the Belmont College representative on behalf of "some deserving person" was ineffective to transfer any interest back to the estate, because the remainder interest belonged to an unknown person and not to the College itself. They argue that the waiver amounted "to something akin to a quitclaim deed. Clarence E. Ellis never gave any interest in his estate to Belmont College." They also argue that Tennessee Code Annotated § 35-13-105, relating to discretionary charitable gifts, does not apply in this situation because the bequest was made to a "deserving person," not a charity.

In construing this provision, we must strive to interpret the will in a manner that effectuates the intention of the testator. *Id.*, 496 S.W.2d at 479. In determining the testator's intent, we must look to the "manifest language of the entire will." *Martindale v. Union Planters Nat'l Bank*, No. 02A01-9502-CH-00030, 1996 Tenn. App. LEXIS 298, at *8 (Tenn. Ct. App. May 21, 1996). In considering Clarence's bequest to the "deserving person," we must conclude that the language manifests an intent to give the remainder interest to a person designated by Belmont College. Clarence's will in effect grants Belmont College a remainder interest to hold in trust and distribute at its discretion.[10] Accordingly, at Clarence's death, Belmont College had a vested, transmissible remainder interest, and therefore could accept $2,500 in cash to hold in trust for the "deserving person" in exchange for its remainder interest in 50% of the funeral home stock.[11]

Because all of the remaindermen named in Clarence's will validly transferred their remainder interest back to the estate, Nellie received that interest as Clarence's wife and sole heir. After the transfer of the remainder interests, then, Nellie held both a life estate and a remainder interest in the stock in Ellis Funeral Home, Inc., and those interests merged and she held the property in fee simple as a matter of law.[12] *See Davis v. Winsett*, 1991 Tenn. App. LEXIS 904, at *5-*6 (Tenn. Ct. App.

---

[10]The defendants note that, although Clarence's will designated First American as the trustee for this interest, First American formally declined to serve in this capacity and Belmont College assumed that responsibility. This fact does not affect our conclusion on this issue.

[11]The plaintiffs do not allege that Belmont College improperly administered the trust.

[12]The plaintiffs do not allege that applying the merger doctrine would defeat the testator's intent. *See Browning v. Browning*, 132 S.W.2d 359, 361 (Tenn. Ct. App. 1939).

1991) (recognizing that "when the holder of a life estate in property also purchases a vested remainder in the property, merger takes place and that person becomes the holder of the fee simple in the property"). Accordingly, we affirm the trial court's conclusion that Nellie owned outright the funeral home stock at the time of her death.

Our holding makes it unnecessary for us to address the issues of whether the plaintiffs had standing or whether their claims were brought within the applicable statute of limitations. Furthermore, our holding necessarily disposes of the plaintiffs' claims relating to the proper disposition of the parcels of real estate, because Nellie had the actual authority to negotiate contracts relating to that property. Thus, we will not address those issues further in this appeal.

The decision of the trial court is affirmed. Costs are taxed to the appellants, Charles W. Moore, Linda Moore Maggart as executrix for the estate of William Herschel Moore, a/k/a Herschel Moore, deceased, Ray Swing, Juanita Swing Sircy, Jeanne Swing Pennington, and James Edward Swing, and their sureties, for which execution may issue if necessary.

_____
HOLLY K. LILLARD, JUDGE